IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KELSEY CUZZUPE**, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 25-8-KSM |
| **NEW JERSEY MANUFACTURERS INSURANCE GROUP**, | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                                                         **April 9, 2025**

In insurance contracts, as in life, you get what you pay for. Plaintiff Kelsey Cuzzupe took out an automobile insurance policy through Defendant New Jersey Manufacturers Insurance Group ("NJM"). In exchange for lower premiums, Cuzzupe agreed that NJM would not cover noneconomic damages from car accidents involving an underinsured motor vehicle unless her injuries fell under one of the exceptions in N.J. Stat. Ann. § 39:6A-8. NJM now moves for partial summary judgment, asking the Court to enforce this agreement and rule that this limitation applies to Cuzzupe's breach of contract claim against NJM. Because the Court finds that this limitation on coverage is clear and unambiguous in the insurance policy, the Court grants NJM's motion for partial summary judgment.

**I.      Background**

The relevant facts for this motion are undisputed. Cuzzupe took out an automobile insurance policy through NJM, which was issued to her at her then-residence in Pilesgrove, New Jersey. (Doc. No. 22 at 3.) In her policy, Cuzzupe selected the "Limitation on Lawsuit Option" pursuant to New Jersey Law. (*Id.*) This Option, referred to as a "verbal threshold," precludes

noneconomic recovery from car accidents involving underinsured or uninsured motorists unless the insured suffers "bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." N.J. Stat. Ann. § 39:6A-8.  (*Id.*)  Because she received less coverage, Cuzzupe paid less for automobile insurance.  (*Id.*)

Unfortunately, Cuzzupe was rear-ended in Radnor, Pennsylvania by an underinsured motorist in January 2019.  (*Id.* at 2–3.)  As a result of this accident, Cuzzupe claims, among other things, pain, suffering, and noneconomic damages.  (*Id.*)  Cuzzupe brought a tort action in Pennsylvania against both the owner and the operator of the underinsured car (the "Pennsylvania tortfeasors").  (*Id.*)  Under Pennsylvania law, the Pennsylvania tortfeasors could not raise the verbal threshold as a defense in the tort action.  (*Id.*)

On January 2, 2025, Cuzzupe sued NJM in federal court, seeking to recover underinsured motorist ("UIM") benefits under her insurance policy.  (*Id.* at 2.)  In her Complaint, Cuzzupe brought claims for breach of contract and bad faith.  (Doc. No. 1 at 9–12.)  Before NJM filed its answer, Cuzzupe agreed to dismiss her claim for bad faith.  (Doc. No. 14 at 1.)  The Court held a pretrial conference on February 20, 2025.  (Doc. No. 15.)  There, the parties asked for an early judicial resolution on the issue of whether the New Jersey verbal threshold applies to Cuzzupe's breach of contract claim against NJM.  So, in addition to entering a Scheduling Order, the Court entered a Briefing Order that directed Defendants to file a motion for partial summary judgment on the issue of whether NJM can invoke the verbal threshold to limit the scope of its potential damages for Cuzzupe's breach of contract claim.  (Doc. No. 16.)

NJM filed its motion for partial summary judgment on March 7, 2025. (Doc. No. 20.) Plaintiff responded two weeks later. (Doc. No. 22.) The matter is now ripe for this Court's review.

## II. Standard of Review

Summary judgment is appropriate when the "materials in the record," show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "[A]t the summary judgment stage the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. And at "summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations and alterations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted); *see also id.* at 325 ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to

the district court — that there is an absence of evidence to support the nonmoving party's case."). After the moving party has met its burden, the nonmoving party is required to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 323 (internal quotations omitted); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23 (internal quotations omitted). "[T]his standard makes clear that, even though the right to a jury trial is implicated, a nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal quotations omitted). "[U]nsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010).

III. **Discussion**

In its motion, NJM asks the Court to find that Cuzzupe's claim for UIM benefits is subject to a "verbal threshold," which prevents her from recovering noneconomic damages unless her injuries satisfy N.J. Stat. Ann. § 39:6A-8. (Doc. No. 20-1.) NJM points out that the

plain language of Cuzzupe's insurance policy states that NJM will not cover noneconomic damages for UIM claims unless her injuries meet the verbal threshold. (Doc. No. 20-4 at 9–11.) Because she now seeks UIM benefits under the contract, NJM asks the Court to enforce this contractual provision in this action.

Cuzzupe counters that NJM oversimplifies the issue. Her argument rests on two general points. First, she says NJM stands in the shoes of the underinsured motorist because it agreed to pay compensatory damages for all damages that she can legally recover from the underinsured motorist. (Doc. No. 22 at 18–19.) Because the underinsured motorist could not raise the verbal threshold as a defense, she argues, neither can NJM. (*Id.*) Second, she contends that the verbal threshold does not apply here because it applies only to car accidents in New Jersey; whereas this car accident occurred in Pennsylvania and involved Pennsylvania residents. (*Id.* at 19–22.) Thus, she asks the Court to rule that the verbal threshold does not apply.

The Court finds that NJM has the stronger argument because the insurance contract clearly and unambiguously limits NJM's coverage for noneconomic damages based on an accident involving an underinsured motorist. Before the Court interprets the contract, however, it must resolve a threshold question: What law applies?

### A.    No Choice of Law Analysis is Required

The parties disagree about whether a choice-of-law analysis is required. NJM argues that the Court should apply only New Jersey law (Doc. No. 20-4 at 8–9), while Cuzzupe contends that "a choice of law needlessly complicates the instant matter" (Doc No. 22 at 18). The Court agrees with Cuzzupe.

Because this is a diversity case, the Court applies the choice of law rules of Pennsylvania, the forum state. *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011). Under

Pennsylvania's choice-of-law rules, the first step is to determine whether "there is an actual or real conflict between the potentially applicable laws" of New Jersey and Pennsylvania. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). "If [their] laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." *Id.*; *see also Budtel Assoc., L.P. v. Cont'l Cas. Co.*, 915 A.2d 640, 641 (Pa. Super. Ct. 2006) ("[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states. . . . If no conflict exists, further analysis is unnecessary.")

Though NJM argues that only New Jersey law should apply, it fails to identify any "actual or real conflict between the potentially applicable laws" of New Jersey and Pennsylvania. *Hammersmith*, 480 F.3d at 230. Such a showing is difficult because this dispute centers on an issue of contract interpretation—whether Cuzzupe can recover noneconomic damages under the UIM provision of her insurance policy with NJM. "In New Jersey and Pennsylvania, the seminal principle in the interpretation of an insurance contract is that it be given its ordinary meaning, but in cases of ambiguity, the policy must be construed against the insurer and in favor of coverage for the insured, because insurance contracts are essentially contracts of adhesion." *Owens v. Am. Hardware Mut. Ins. Co.*, No. CIV.A. 11-6663 NLH, 2013 WL 6903940, at *4 (D.N.J. Dec. 30, 2013). Because Pennsylvania and New Jersey are generally aligned in their interpretation of insurance contracts, courts "have declined to engage in a choice of law analysis" in this context. *Stern v. AAA Mid-Atl. Ins. Co.*, 147 F. Supp. 3d 341, 343 n.3 (E.D. Pa. 2015). The Court will thus cite to both Pennsylvania and New Jersey cases. *See Huber v. Taylor,* 469 F.3d 67, 74 (3d Cir. 2006) ("If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply.").

B.   **The Contract Limits Coverage for Noneconomic Damages in UIM Claims**

Though Cuzzupe asks the Court to engage in statutory interpretation in addition to contract interpretation, the Court finds that this dispute can be resolved based on contract interpretation alone.  Thus, the issue of whether her UIM claim is subject to the verbal threshold "may be decided on a motion for summary judgment" because "[t]he interpretation of an insurance policy is a question of law."  *Travelers Home & Marine Ins. Co. v. Stahley*, 239 F. Supp. 3d 866, 870 (E.D. Pa. 2017); *see Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 158 (3d Cir. 2017) ("In Pennsylvania, the interpretation of an insurance contract is a question of law." (cleaned up)); *State Nat. Ins. Co. v. County of Camden*, 10 F. Supp. 3d 568, 574 (D.N.J. 2014) (explaining that in New Jersey, "the interpretation of an insurance contract is a question of law").

The applicability of the verbal threshold depends on two provisions in the insurance contract.  The first provision establishes the general coverage that NJM provides for an accident involving an uninsured or underinsured motor vehicle:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of:
>
> 1. **Bodily injury** sustained by an **insured** and caused by an accident; and
>
> 2. **Property damage** caused by an accident except under Paragraph 2 of the definition of **uninsured motor vehicle**.

(Doc. No. 21 at 39.)

To start, the Court agrees with Cuzzupe that this contractual language "provide[s] UIM coverage flowing directly from the obligations of the tortfeasor."  *Stern*, 147 F. Supp. 3d at 344. Cases in New Jersey and Pennsylvania support this conclusion.  In *Hertz Claim Management v.*

7

*Marchetta*, 656 A.2d 1298, 1300 (N.J. App. Div. 1995), for example, a state appellate court interpreted identical language in an insurance contract and found that it ties "the UIM policy limit to the amount that the insured would have been able to recover from the tortfeasor less the amount of the tortfeasor's coverage." In other words, the UIM benefits depended on what the insurer could recover against the tortfeasor. Likewise, in *Willett ex rel. Willett v. Allstate Ins. Co.*, 359 F. App'x 349, 351 (3d Cir. 2009), the Third Circuit applied Pennsylvania law to interpret a nearly identical insurance provision and reached the same conclusion as the court in *Hertz*. It held that "Allstate's contractual liability, as established by the provisions of its policy, is derivative of [the tortfeasor's] tort liability." *Id.* And, the Court explained, "nothing in Allstate's policy provides for the determination of [the tortfeasor's] tort liability based on Pennsylvania contractual law." *Id.*

Yet this does not resolve the dispute here. NJM does not contest that Cuzzupe could recover noneconomic damages from the Pennsylvania tortfeasors. (Doc. No. 20 at 2.) Instead, it argues that the insurance contract *independently* limits NJM's coverage of UIM benefits. On the page following the general scope of UIM coverage, there is a heading labeled "Exclusions" in bold, capitalized letters. (Doc. No. 21 at 40.) Under the "Exclusions" heading, the policy reads:

> We do not provide coverage under this endorsement for **property damage** or **bodily injury** sustained by any **insured**:
>
> . . .
>
> For damages for pain, suffering and inconvenience resulting from **bodily injury** caused by an accident involving an **uninsured** or **underinsured motor vehicle**, unless the injured **insured** has a legal right to recover damages for such pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act. The injured **insured's** legal right to recover damages for pain, suffering and inconvenience under the New Jersey Automobile Reparation

8

>     Reform Act will be determined by the liability tort limitation, if any, applicable to that **insured**.

(*Id.*)

This exclusionary language resolves the parties' dispute. Though the general provision about UIM coverage puts NJM in the Pennsylvania tortfeasor's position, the insurance contract expressly carves out noneconomic damages from the scope of such coverage. Under Pennsylvania and New Jersey law, when the contractual language is plain and unambiguous, the court must follow the ordinary meaning of its terms and enforce the contract as written. *See Stahley*, 239 F. Supp. 3d at 870–71 (applying this principle under Pennsylvania law); *County of Camden*, 10 F. Supp at 574 (applying this principle under New Jersey law).

Here, the Court finds that the exclusionary language in the insurance policy clearly and unambiguously disclaims coverage for noneconomic damages that do not meet the verbal threshold. (Doc. No. 21 at 40.) So, while the Pennsylvania tortfeasors could not have raised the verbal threshold as a defense in the Pennsylvania tort action, NJM can do so here because the insurance policy states that the verbal threshold applies to Cuzzupe's claim for UIM benefits. In other words, NJM has an independent, *contractual* basis to invoke the New Jersey verbal threshold.

This fact dooms Cuzzupe's attempt to sidestep the verbal threshold. Both Cuzzupe and NJM agree that her "UIM claim is a *contractual* one, arising out of the insurance policy issued" by NJM to Cuzzupe. *Bardis v. First Trenton Ins. Co.*, 971 A.2d 1062, 1068 (N.J. 2009) (emphasis added); *Erie Ins. Exch. v. Bristol*, 174 A.3d 578, 586 (Pa. 2017) (applying "general contract principles to the enforcement of an insured's UM/UIM claim"). (*See* Doc. No. 20-4 at 9–10; Doc. No. 22 at 23.) And because Cuzzupe sues NJM for breach of *contract* to recover

9

UIM benefits, the Court finds that NJM can raise the verbal threshold as a defense to limit the scope of potential damages.

Cuzzupe resists this conclusion on three grounds, but none persuades. *First*, she contends that the verbal threshold does not apply here because the statute applies only to accidents in New Jersey; whereas, this accident occurred in Pennsylvania and involved Pennsylvania residents. (*Id.* at 19–22.) The Court disagrees for two reasons.

For one, it is not clear that Cuzzupe's interpretation of the verbal threshold statute is correct. The statute permits insurers to limit "tort liability for noneconomic loss . . . as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State." N.J. Stat. Ann. § 39:6A-8. Though some courts have limited this statute's reach "to injuries arising out of use of an automobile *in [New Jersey]*," *Stern*, 147 F. Supp. 3d at 347, other courts have found that "the conjunctive 'or' in the statute indicates that ownership or use of the automobile in [New Jersey] are alternative bases for the exemption," *Cutitta v. Selective Ins. Co. of Am.*, 604 A.2d 989, 991 (N.J. App. Div. 1992).

The Court finds that the latter interpretation is the more natural reading of the statute. The statute's reach extends to bodily injury arising out of one of four things: ownership, operation, maintenance, or use of an insured vehicle in New Jersey. Because the ordinary meaning of the statute is that any of these bases suffices, the Court will enforce this ordinary meaning and follow the court's statutory interpretation in *Cutitta*. *See Renz v. Penn Cent. Corp.*, 435 A.2d 540, 541 (N.J. 1981) ("[S]tatutory language should be given its ordinary meaning absent specific intent to the contrary.") Under this interpretation of the statute, "if one owns a car in New Jersey and is insured [t]here," as Cuzzupe was, "[s]he is subject to the exemption." *Id.*

10

For another, even if Cuzzupe's statutory interpretation were correct, it would not mean that the verbal threshold cannot apply to her UIM claim. Cuzzupe's insurance policy with NJM expressly limits NJM's UIM coverage for noneconomic damages through the verbal threshold, so she would also have to show why this *contractual* provision is unenforceable. Put otherwise, it is not enough that the Pennsylvania tortfeasors could not raise the verbal threshold as a defense; Cuzzupe must also explain away the provision in her insurance policy that limits her recovery of UIM benefits.[1] Because she has cannot do so, the Court rejects her argument that the out-of-state accident renders the verbal threshold set forth in her insurance policy inapplicable to her UIM claim.

*Second*, Cuzzupe argues that even though her UIM claim is "contractual in nature," its purpose is to "to put [her] in as good a position as if the tortfeasor possessed an amount of liability insurance equal to the UIM coverage of an 'insured' under the policy in question." (Doc. No. 22 at 23 (quoting *Selective Ins. Co. of Am. v. Thomas*, 847 A.2d 578, 581 (N.J. 2004)).) So, she says, she should be able to recover full damages "based on the legal compensation that could be obtained from the particular tortfeasor involved." (Doc. No. 22 at 24.)

If the Court were to accept her argument, however, it would be enforcing one part of her insurance contract while ignoring another. Perhaps Cuzzupe's argument would have some teeth if her policy provided only that NJM "will pay compensatory damages which an **insured** is

---

[1] In *Stern*, 147 F. Supp. 3d at 346–49, the district court did not end its analysis once it concluded that the verbal threshold statute did not apply to the underlying tort action. Instead, it continued to evaluate whether the insurance policy nevertheless contained a provision that incorporated the verbal threshold and limited the scope of UIM benefits. *Id.* Implicit in the court's reasoning is the point made explicit here: the mere fact that the statute does not apply to the underlying tort action does not mean that the verbal threshold cannot apply as an independent, contractual provision between the insurer and the insured.

11

legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**." (Doc. No. 21 at 39.)  But the very next page of her insurance policy excludes coverage "for pain, suffering and inconvenience resulting from **bodily injury** caused by an accident involving an **uninsured** or **underinsured motor vehicle**." (*Id.* at 40.)  Thus, while the Court appreciates the noble aims of UIM claims in New Jersey and Pennsylvania, there is no reason to rewrite her insurance policy and delete an express limitation on the scope of NJM's UIM coverage.[2]

*Third*, Cuzzupe argues that this Court should follow the district court's reasoning in *Stern* and rule that the verbal threshold is not applicable here.  Though Cuzzupe concedes that the insurance policy here is different than the one in *Stern*, she downplays this difference because the policy here includes just "one more word." (Doc. No. 22 at 24.)  Yet the addition of one word makes all the difference.

In *Stern*, 147 F. Supp. 3d at 349, plaintiffs sought noneconomic damages for a UIM claim pursuant to an insurance policy that excluded coverage for noneconomic damages from accidents involving only "an '*uninsured motor vehicle*.'"  The policy did not expressly exclude coverage for noneconomic damages from accidents involving an *underinsured motor vehicle*.  In other words, the insurance policy "explicitly invoke[d] the tort limitation for uninsured claims, but not for underinsured claims." *Id.*  Because of this omission, the Court rejected the insurer's argument "that even if it stands in the shoes of the underinsured Pennsylvania driver," it can

---

[2] Though UIM claims promote the state's interest in making an insured person whole, the verbal threshold also serves a worthy state objective—lowering insurance premiums in New Jersey.  *See Loftus-Smith v. Henry*, 669 A.2d 852, 857 (N.J. App. Div. 1996).  NJM offers automobile insurance to New Jersey citizens, like Cuzzupe, and charges lower premiums for such insurance, in part, because it takes advantage of the "statutory protection of tort exemption." *Id.*  If the Court were to ignore the clear language in the insurance policy that incorporates this statutory protection, it could frustrate the state's goal of making automobile insurance more affordable.

invoke the verbal threshold because plaintiffs unequivocally agreed to it. *Id.* Indeed, the court found that this argument was "contradicted by the terms of the Policy itself." *Id.*

By contrast, here, the insurance policy expressly limits coverage for noneconomic damages from accidents involving *both* "an **uninsured** or **underinsured motor vehicle**." (Doc. No. 21 at 40.) So, unlike the insured driver in *Stern*, Cuzzupe unequivocally agreed to this provision that limited the scope of coverage for noneconomic damages for UIM claims like the one at issue here. The Court thus agrees with NJM that it has an independent contractual basis to subject Cuzzupe's breach of contract claim to the verbal threshold. This argument aligns both with the explicit terms of the policy itself as well as Cuzzupe's decision to select the "Limitation on Lawsuit Option." (Doc. No. 22 at 3.)

* * *

In short, Cuzzupe's insurance policy clearly and unambiguously limits NJM's coverage of noneconomic damages for UIM claims. Because this provision is enforceable, the Court finds that NJM can raise the verbal threshold as a defense to limit Cuzzupe's recovery of UIM benefits here.

**IV.   Conclusion**

For the reasons set forth above, the Court grants NJM's motion for partial summary judgment. An accompanying order follows.